In the Matter of ALEXANDER CHAVICH, Respondent, *v.* BOARD OF EXAMINERS OF THE BOARD OF EDUCATION OF THE CITY OF NEW YORK et al., Appellants.

Second Department, April 12, 1965.

58

*Leo A. Larkin, Corporation Counsel* (*Seymour B. Quel, Joseph M. Callahan, Jr.,* and *Isidore Heyman* of counsel), for appellants.

*Schmidt & McCormick* (*John M. Kenney* of counsel), for respondent.

BELDOCK, P. J.   Petitioner passed all the written, interview, and performance tests in connection with his examination for

license as a regular teacher of music in the New York City junior high schools. However, he failed the required physical and medical examination solely because he is blind. The regulations of the appellant Board of Examiners of the Board of Education of the City of New York require at least 20/30 vision in one eye, with or without glasses. This proceeding under article 78 of the CPLR was brought to compel certification of petitioner for eligibility on the ground that appellants' regulation with respect to sight violates section 3004 of the Education Law (as amd. by L. 1960, ch. 270). This section, as amended, prohibits the State Commissioner of Education from prescribing, for all the public schools of the State, regulations to disqualify, solely by reason of blindness, any blind person otherwise qualified for a position as teacher. Special Term granted the application.

In my opinion, the statute (Education Law, § 3004, as amd. by L. 1960, ch. 270) is inapplicable to appellants for a number of reasons:

(1) The statute (Education Law, § 3004) provides that the State Commissioner of Education shall prescribe regulations governing the examination and certification of teachers employed in all public schools of the State. However, the Commissioner's certification qualifies a teacher to teach only in public schools outside New York City. To qualify as a teacher in the New York City public schools, certification by the State Commissioner of Education is not required. What is required is a certification by the New York City Superintendent of Schools (Education Law, §§ 3008, 2566, subd. 7) after examination conducted by the Board of Examiners of the Board of Education (Education Law, § 2569, subd. 1). The provisions of the statute (Education Law, § 3004) which prohibit the State Commissioner of Education from prescribing regulations with respect to blindness as a disqualification for obtaining the Commissioner's certification to teach cannot be applicable to teachers who do not require his certificate.

(2) The Education Law authorizes the State Commissioner of Education to prescribe minimum qualifications to teach in the public schools of the State. At present, such minimum requirements relate only to the academic standards. However, subdivision 9 of section 2573 of the Education Law provides that the New York City Board of Education may prescribe additional or higher qualifications for persons employed as teachers in the New York City school system. In accordance with such specific statutory power, the New York City Board of Education has prescribed additional or higher qualifications — academic, physical and medical, among others. One of these additional or

higher requirements relates to sight, which petitioner failed to meet. A condition precedent to employment as a teacher in the New York City public schools is compliance with the additional or higher requirements prescribed by the New York City Board of Education (*Matter of Joseph,* 55 N. Y. St. Dept. Rep. 507).

(3) Subdivision 2 of section 2554 of the Education Law gives the New York City Board of Education the exclusive right to determine the qualifications for teachers in the New York City school system. That right is not curtailed by section 3004 of the Education Law, which in express language curtails only the power of the State Commissioner of Education.

(4) Any other interpretation would make section 3004 of the Education Law inconsistent with section B20–42.0 of the Administrative Code of the City of New York. This section provides for retirement of a teacher for physical incapacity for the performance of duty. Although under the Administrative Code provisions a teacher who becomes blind may be retired for physical disability, yet, in the view of the minority, a new teacher who is blind could be granted a license.

(5) The State Commissioner of Education, who is charged with the administration of section 3004 of the Education Law, has interpreted the statute not to apply to teachers in the New York City schools. In 1963 the Commissioner determined that a person not blind, but not possessing the extent of vision required by the New York City Board of Education, is not entitled to be licensed as a teacher (*Matter of Bart,* 2 N. Y. Educ. Dept. Rep. 512). The minority view would require the New York City Board of Education to license not only blind teachers, but also teachers not blind who do not possess the required vision.

The New York City Board of Education has determined that an applicant who does not possess at least 20/30 vision in one eye, with or without glasses, cannot satisfactorily perform the duties of a teacher in the New York City schools and that such a condition may endanger the health or safety of pupils. Subsequent to the enactment of amended section 3004 of the Education Law, the State Commissioner of Education held that the Board of Education vision requirements are not so unrelated to the performance of teachers' duties as to be unreasonable or arbitrary (*Matter of Bart, supra*).

That the determination by the Board of Education with respect to vision requirements is reasonable is clear when the multitude of duties of a New York City junior high school teacher is considered, e.g., maintaining discipline in a class of approximately 30 children, aged 12 to 15; preventing them from

fighting or from throwing pencils or erasers at each other (of which there have been many instances resulting in tort actions against the Board of Education, involving serious injury to pupils); marking roll books, examinations, or other written work; preventing cheating on examinations; writing on the blackboard; fire drills; going up and down stairs quickly in emergencies; use of textbooks; keeping the room clean; performing other administrative duties during nonteaching periods, etc.

Whether a blind teacher may satisfactorily perform classroom duties in a particular school may not be left for the determination of the school principal or other supervisory official, as the minority opinion suggests. The statute requires the Board of Examiners to determine whether an applicant has the ability to perform satisfactorily the duties of a teacher. The Board of Education is concerned with the effective performance of duties by a teacher both inside and outside the classroom. Although my sympathies are with this petitioner because of his unfortunate affliction, it is my opinion that the refusal to certify petitioner as eligible for a teaching license was within the power of the Board of Examiners.

The judgment should be reversed on the law and the facts, without costs, and the petition dismissed, without costs, Findings of fact implicit or contained in the opinion of Special Term which may be inconsistent herewith should be reversed and new findings made as indicated herein.

SAMUEL RABIN, J. (dissenting). In this article 78 proceeding, the underlying substantive issue is whether the Board of Examiners of the Board of Education of the City of New York has warrant in law to refuse certification for appointment as a music teacher to a person who has what it calls " defective vision " or " vision inadequate for the duties of the position ", and who is " legally blind " but who otherwise apparently possesses all academic, professional and educational attainments required for the position. The learned Special Term has found that the refusal of the Board of Examiners (the agency of the Board of Education) was arbitrary, unreasonable, unlawful and in violation of section 3004 of the Education Law (as amd. by L. 1960, ch. 270, eff. March 22, 1960).

On this substantive issue the petitioner contended, and the learned Special Term found, that the statute (Education Law, § 3004, as amd. by L. 1960, ch. 270) removed blindness as a disqualification for license as a teacher in all the public schools of the State. The Special Term further held that the statute was proper and reasonable in that it adopted as a public policy the

postulate that " blind persons can scientifically acquire required competence in many fields of endeavor, and particularly in the teaching profession." The Special Term concluded that: " The Legislature having thus spoken, its mandate must be followed."

The learned Special Term also held: (1) that the board's published physical and medical standards which require the minimum of " at least 20–30 vision in one eye with or without glasses " were invalid to the extent that they are inconsistent with section 3004 of the Education Law; (2) that such standards were inapplicable to petitioner; and (3) that since petitioner showed compliance with all requirements, save vision, he was entitled to a direction that the Board of Examiners grant him a license, notwithstanding his blindness.

On the present appeal the Board of Examiners contends that the statute (Education Law, § 3004) is inapplicable to the board since the statute by its literal terms applies only to the State Commissioner of Education. The board also contends that, in any event, a construction of the statute which removes blindness as a disqualification for teaching competence " in all instances, as given by Special Term," is at war with the mandate of the State Constitution (art. V, § 6) that civil service appointments are to be made by " merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive ".

In his moving papers, petitioner alleged that he had successfully passed the written, interview and performance test. He further averred that he had completed all tests required by the Board of Examiners for the licensing of teachers of music in junior high schools, but that he was thereafter denied certification only by reason of the examiners' unlawful determination to disqualify him for visual inadequacies in contravention of the statute (Education Law, § 3004).

In answer, the Board of Examiners admitted that petitioner had received passing grades in the written, interview and performance tests, but contended that he was properly rejected because of vision inadequate to meet its standards, as set out in the notice of the examination and in the documents therein mentioned. The board also admitted that petitioner had completed all tests required of him save the " appraisal of record " which was still incomplete.

At the core of this controversy stands the statute (Education Law, § 3004, as amd. by L. 1960, ch. 270). The relevant portion of this statute reads as follows: " § 3004. Regulations governing certification of teachers. The commissioner of education shall prescribe, subject to approval by the regents, regulations

governing the examination and certification of teachers employed in all public schools of the state    \*   \*   \*   *but no such regulations shall hereafter prohibit, prevent or disqualify any person, who is otherwise qualified, from competing, participating and registering for such examination nor from obtaining a teacher's certificate or from qualifying for a position as a teacher solely by reason of his or her blindness* ". (Emphasis supplied.)

It may be noted that the language above emphasized constituted the 1960 amendment to section 3004 effected by chapter 270, and that this amendatory act was introduced and officially published by title as: " AN ACT to amend the education law, in relation to qualifications of blind persons to teach in public schools " (1 Sess. Laws of N. Y. [183rd Sess.], 1960, p. 1085).

It may further be noted that the Commissioner of Education is by statute the chief executive official in the State's educational system (Education Law, § 305, subds. 1, 2). This section reads as follows:

" § 305. General powers and duties. The commissioner of education is hereby charged with the following powers and duties:

" 1. He is the chief executive officer of the state system of education and of the board of regents. He shall enforce all general and special laws relating to the educational system of the state and execute all educational policies determined upon by the board of regents.

" 2. *He shall have general supervision over all schools and institutions which are subject to the provisions of this chapter, or of any statute relating to education,* and shall cause the same to be examined and inspected, and shall advise and guide the school officers of all districts and cities of the state in relation to their duties and the general management of the schools under their control." (Emphasis supplied.)

In my view, the 1960 amendment to section 3004 of the Education Law effected a State-wide declaration of broad public policy that no blind person was hereafter to be deprived of the privilege of employment as a teacher " solely by reason of his or her blindness " (L. 1960, ch. 270). It is inconceivable that when the Legislature directed the Commissioner of Education not to disqualify blind persons, it meant to exempt from that mandate the local school authorities under his jurisdiction and supervision. On a matter affecting so vitally and equally all of the people of the State, it would indeed be an anomaly to hold that the Legislature intended to set up different standards for different portions of the State. For such dual standards would exclude New York City — the most populous area of the State

— and would thus devitalize the new policy and render the amendment self-defeating.

Several other considerations dictate the conclusion that this amendment (L. 1960, ch. 270), while seemingly addressed only to the State Commissioner of Education, is in effect a statutory directive binding all the local boards of education and their employees or agencies charged with the recruitment and employment of teachers:

(1) The title of the amendatory act stated that the legislation was designed " in relation to qualifications of blind persons to teach in public schools." From the context of the amendment and the title (when read together), it is evident that a State-wide policy was established. While strictly speaking the title is not part of an act (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 13, p. 28), nevertheless " Where the title states a general purpose or object, all matters fairly and reasonably connected therewith, and all measures which will or may facilitate the accomplishment of such purpose or object, are properly incorporated into the. act and are germane to the title " (ibid., p. 31). The title of an act " is a circumstance not to be disregarded in the interpretation of the statute " (Broderick v. Weinsier, 253 App. Div. 213, 219, affd. 278 N. Y. 419; Matter of Blake, 208 Misc. 22). The character of a statute is generally to be fixed by its provisions, and not by its title, " but when its language is ambiguous and doubtful, resort may be had to its title and the occasion of its enactment, to explain an ambiguity in its terms " (People v. O'Brien, 111 N. Y. 1, 59–60).

At bar, since the title projected the problem of employment of blind applicants " to teach in public schools," it must follow that the legislative target was all the public schools in the State, for certainly the Commissioner of Education, as such, operates no schools and hires no teachers, but merely supervises the institutions which do.

(2) By virtue of section 305 of the Education Law, the Commissioner of Education is the chief executive official of the State-wide system of public education. To adopt the board's argument that, while the statute (L. 1960, ch. 270) precludes the Commissioner from barring blind persons from employment as teachers, the statute has no such effect upon the Commissioner's subsidiary agencies, is to say that upon this subject the Commissioner has no authority at all over the function of the local Boards of Education in complying with State law in the licensing of teachers in New York City. In my view, this would be reading into the statute (L. 1960, ch. 270) a negative clause which was no part of the legislative scheme and which would effectively

subvert the legislative intent. The Legislature meant to preserve the existing scheme of appointment of teachers, but at the same time it in effect imposed upon the State Commissioner and upon all his satellite agencies (of whom the appellant board is one) the positive duty henceforth not to preclude blind applicants from consideration for employment *solely by reason of their blindness.*

(3) An important factor bearing upon the scope and intent of the amendment (L. 1960, ch. 270) is that section 3004 appears in title IV ("Teachers and Pupils") and article 61 ("Teachers and Supervisory and Administrative Staff") of the Education Law, in the midst of a number of sections dealing with the rights, privileges, and status of the teacher or applicant in all the public educational installations of the State. Section 3004 as amended may be said, therefore, to be addressed directly not only to the State Commissioner of Education but to all the teachers or applicants in the entire educational system, and their employers as well.

The Board of Examiners here cannot escape the rigor of the statute (Education Law, § 3004, as amd. by L. 1960, ch. 270) by urging that it is still free to adopt "additional or higher qualifications for the persons employed" (Education Law, § 2573, subd. 9; see, also, § 2566, subd. 7), and that its visual standards represent such extra qualifications. In my view, the word "qualifications" more naturally refers to training and experience, such as graduation from college, completion of postgraduate work, classroom experience, and other comparable intellectual attainments, and may perhaps refer to elements of physical stature or physical endowment *except where the Legislature has forbidden consideration thereof.* While the board is still free to prescribe the intellectual attainments and physical attributes required of every candidate, nevertheless, by virtue of the amendment (L. 1960, ch. 270) it can no longer prevent a blind candidate from competing in any qualifying test or from passing such test *solely by reason of his blindness.*

However, while I believe that a candidate may not be rejected for blindness, it is also my view that his blindness per se does not compel his licensing and appointment as a regular teacher. In relation to the qualification and appointment of teachers, the statute (Education Law, § 3004, as amd.) must be read *in pari materia* with the Civil Service Law. Subdivision 2 of section 55 of the Civil Service Law, after requiring the co-operation between the State and each Municipal Civil Service Commission with the Commission for the Blind in order to prevent discrimination against blind or handicapped persons applying for a

position in the civil service, concludes as follows: "unless the condition of blindness or other handicap be such as to prevent the blind or handicapped person from satisfactorily performing the duties of the position to which he seeks appointment." Subdivision 3 of section 55 of the Civil Service Law further provides: (1) that "an applicant or an eligible for a civil service position who has been found to be blind" may have the Commission for the Blind or the State Department of Education obtain a detailed description of all the duties of the position involved and investigate the extent of his alleged disability and report the findings to the State Civil Service Department or local Civil Service Commission "as to the physical ability of such applicant or eligible to perform the duties of such position"; and (2) that such "findings shall be given due consideration" by the said Civil Service Department or Commission.

When read together, subdivisions 2 and 3 of section 55 of the Civil Service Law state in effect that blindness is not per se a disqualification for a teacher aspirant, but that each particular case must be individually examined and adjudged on its own facts. Under such an evaluation, namely, that blindness is neither a disqualification nor a qualification, the resulting interpretation would be *in pari materia* with the Civil Service Law and would be consistent with the related policy of the Legislature to prohibit discrimination against applicants for teaching positions based on age (Education Law, § 3027).

The underlying grievance against the board is that it had applied illegal visual standards to disqualify petitioner from placement on the eligible list. Of course, it was not the function of the board to grant a license as a regular teacher. That power was reserved by statute to the city's Superintendent of Schools who is directed to issue such licenses on the recommendation of the Board of Examiners (Education Law, § 2566, subd. 7). By statute, the function of the Board of Examiners is merely to hold open competitive examinations for "all applicants who are required to be licensed or to have their names placed upon eligible lists for appointment * * * and to prepare all necessary eligible lists" (Education Law, § 2569, subd. 1). It was therefore beyond the power of the learned Special Term to order the Board of Examiners to *grant* petitioner a license.

It is therefore my opinion that to this extent the final decretal paragraph in the judgment under review should be modified. The language therein to the effect that petitioner must be licensed as a regular teacher was in excess of the learned Special Term's authority over the Board of Examiners as a respondent in the instant proceeding. The court could only undo the

legal wrong, if any, committed by the board (*Matter of Cheasty* v. *Board of Examiners of Bd. of Educ. of City of N. Y.*, 230 N. Y. S. 2d 234, 238).

When the direction for the issuance of the license is deleted, the final decretal paragraph would merely direct the Board of Examiners to certify petitioner to the Superintendent of Schools as eligible for license and appointment unless the "Appraisal of Record" directed to be completed within 30 days should prove to be unsatisfactory. In effect, the petitioner would then gain the usual three-year probationary period for the acquisition of tenure as a teacher in his eligible subject. In that period, based on his classroom efficiency and actual classroom accomplishment, he would be rated as either satisfactory or unsatisfactory by his principal or other supervisory officials. In the interim, the New York City Board of Education can accommodate itself to the new statute by sharing in the actual experience of the up-State and out-of-State Boards of Education and employment agencies which have utilized the services of blind teachers; and petitioner individually can have the full opportunity to prove himself qualified to perform the duties of the position to which he aspires. During that period sufficient objective data will become available upon which a specific judgment of petitioner's personal fitness to teach can be based; and thus his blindness per se will be neither a disqualification nor a qualification for the position.

It follows that, with respect to petitioner's ability to perform the duties of the position he seeks, the administrative wisdom of the Board of Examiners or of its heads is not now at issue; it may later come into question should petitioner's subsequent classroom ratings come up for review.

There is no factual foundation for the majority's view that — in advance of petitioner's attempted performance of his duties as a music teacher — the board unilaterally may now conclude that a blind person cannot fulfill such duties and that petitioner therefore must be summarily rejected, regardless of his conceded satisfactory demonstration that he is in every respect fit and qualified to teach music.

That view is also untenable because it is based primarily on collateral factors which have no necessary connection with the teaching of music and which are wholly incidental to teaching. For instance, the majority points out that a blind teacher cannot possibly: (1) maintain proper discipline in the classroom or prevent altercations between students, so as to avoid consequent lawsuits against the city; (2) mark the attendance rolls or grade the written test papers; (3) supervise or direct fire

drills and proper use of stairways in emergencies; and (4) perform other administrative duties during nonteaching periods.

All this may readily be conceded. But what the majority overlooks is that none of these disciplinary, administrative or clerical duties relates in the slightest degree to the basic qualifications or fitness to teach. These duties are incidental or peripheral; they are wholly unrelated to the essential ability to teach. True, these incidental duties must be performed. But the board, in furtherance of the fundamental policy of the State with respect to the employment of blind teachers otherwise qualified, may easily arrange for their performance by other sighted persons, whether such sighted persons be teachers, clerks or more mature students. Essentially, the situation is simply one of mutual accommodation and adjustment by all concerned.

In any event, the disciplinary, administrative and clerical duties envisaged by the majority present no insoluble problems or insuperable obstacles to a Board of Education willing to meet them and willing to adopt regulations and measures appropriate to the needs of the occasion. Surely, the intelligence and the ingenuity of the members of the Board of Education of the City of New York are equal to the task.

. The efficacy of the blind teacher at all levels of instruction in the public schools is attested by the undisputed facts in this record. . Equally important, it is further attested by the facts of history: Since the 16th century the utilization of blind teachers has gained acceptance throughout the civilized world and has produced teachers of renown in every field of endeavor, especially music in which the blind have proved themselves most proficient.[*]

In sum, it is my view that the learned Special Term properly ruled that the Board of Examiners acted arbitrarily in this case because it disqualified petitioner from eligibility upon the basis of its own prior visual standards which had been rendered illegal by the 1960 amendment (ch. 270) to section 3004 of the Education Law. The board acted "in violation of the legal rights" of petitioner (*Matter of Cheasty* v. *Board of Examiners*, 230 N. Y. S. 2d 234, 238, *supra*).

It may also be noted that the two rulings of the State Commissioner of Education, adverted to by the board in its brief (*Matter of Kerr*, 2 N. Y. Educ. Dept. Rep. 287–288; *Matter of Bart*, 2 N. Y. Educ. Dept. Rep. 512, 513) lend no aid to the board

---

[*] 4. Encyclopaedia Britannica (11th ed.), pp. 67, 68, 71; 3 Encyclopaedia Britannica (1961 ed.), pp. 721, 723; 3 Encyclopaedia Britannica (14th ed., 1937), pp. 730–731; 2 Encyclopedia of the Social Sciences (1930 ed.), p. 721 *et seq.*

here. In neither decision did the Commissioner of Education take any position as to the application of section 3004 of the Education Law (as amd. by L. 1960, ch. 270), although in the *Bart* case he was specifically invited to do so. Moreover, both these decisions involved sighted persons neither of whom had obtained a certification as a legally blind person, as had the petitioner here.

By its action the board has subverted the fundamental educational policy of the State. Obviously, no political subdivision of the State and no Board of Education of any such subdivision should be empowered to undermine or thwart the educational policy established by the State itself.

Accordingly, the judgment under review should be modified so as to delete the direction to the board to issue a license to petitioner; and as so modified, the judgment should be affirmed.

UGHETTA and HILL, JJ., concur with BELDOCK, P. J.; RABIN, J., dissents and votes to modify the judgment, in opinion in which CHRIST, J., concurs.

Judgment reversed on the law and the facts, without costs, and petition dismissed, without costs. Findings of fact implicit in or contained in the opinion at Special Term which may be inconsistent herewith are reversed, and new findings made as indicated herein.